IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE PETREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. |
| | ) | |
| TICKETMASTER, a Delaware corporation | ) | **FILED: MAY 01, 2008** |
| | ) | **08CV2490     AEE** |
| and DOES I-10, | ) | **JUDGE GETTLEMAN** |
| | ) | **MAGISTRATE JUDGE COLE** |
| Defendants. | ) | |

**NOTICE OF REMOVAL**
**(28 U.S.C. §1446)**

**TO THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. Sections 1331, 1441(a) and (b) and 1446, defendant Ticketmaster hereby removes the action entitled *Petrey v. Ticketmaster, et al.*, Circuit Court of Cook County, Illinois, Case No. 08 CH 12253 (the "Action"), to the United States District Court for the Northern District of Illinois, Eastern Division, which is the judicial district in which the Action is pending:

1.      Ticketmaster is the only named defendant in the Action filed on April 1, 2008, in the Circuit Court of Cook County, Illinois.  Ticketmaster was served with the Summons, Motion for Class Certification and Complaint on April 2, 2008, a true and correct copy of which is attached hereto as Exhibit A.  Therefore, this Notice of Removal is timely under 28 U.S.C. §1446(b) because this notice is filed within 30 days of receipt of the summons.

2.      As further set forth below, removal of this action is proper under 28 U.S.C. §1441 because this is a civil action brought in state court over which the federal district court would have had original jurisdiction had the action been commenced in federal court in that:  1) a

federal question is presented, 2) diversity jurisdiction exists, and 3) the Class Action Fairness Act provides for removal.

3.    This Court Has Original Jurisdiction Pursuant To The Fair Credit Reporting Act. The Action is a civil action in which this Court has original jurisdiction under 28 U.S.C. §1331 in that it arises under the laws of the United States. In particular, Plaintiff's sole claim is for statutory damages created by and arising under the Fair Credit Reporting Act 15 U.S.C. §1681, and which act grants this Court original jurisdiction, 15 U.S.C. §1681p. Plaintiff has not asserted any state law claims nor other bases for relief.

4.    This Court Has Diversity Jurisdiction Over This Action. As alleged, Plaintiff is a citizen of Illinois and Ticketmaster is a Delaware corporation with its principal place of business in California. (Complaint, ¶¶ 18-19.) Does 1-10, alleged officers, directors, employees and/or agents of Ticketmaster, are merely fictitious parties against whom no cause of action can be validly alleged, who have not been served with process, and therefore do not bar removal. (Complaint, ¶ 21.)    Further, to the best of Ticketmaster's information and belief no officer, director or employee of Ticketmaster who had any involvement in the alleged fact set forth in Paragraph 28 of the Complaint is a citizen of the State of Illinois such that diversity would be destroyed. Plaintiff has alleged damages in excess of $75,000 exclusive of interest and costs (at least 100 instances meriting damages of up to $1,000). (Complaint, ¶¶ 25, 78.) Therefore, this Court would have had original diversity jurisdiction pursuant to 28 U.S.C. §1332, and removal is proper.

5.    This Court Has Original Jurisdiction Pursuant To The Class Action Fairness Act of 2005. 28 U.S.C. §1332(d) provides original jurisdiction to federal courts of class actions in which any class member is diverse from any defendant, there are 100 or more class members and

the aggregate amount in controversy exceeds $5,000,000. Plaintiff and Ticketmaster are diverse, and Plaintiff has alleged a national class of at least 100 members. (Complaint, ¶ 25.) The claims asserted by the putative class, aggregated as required by 28 U.S.C. §1332(d)(6) exceed the sum of $5,000.000 within the meaning of 28 U.S.C. §1332(d)(2).

6.    The only papers, pleadings or orders served to date in this action are the Summons, Plaintiff's Motion for Class Certification, and the Class Action Complaint, all of which are attached to this Notice of Removal. A copy of this Notice of Removal is being filed with the Circuit Court of Cook County and concurrently served on Plaintiff's counsel of record.

Respectfully submitted,

TICKETMASTER

By: _____
One of its attorneys

Dated:  May 1, 2008

James K. Gardner (IARDC #913448)
Maria J. Minor (IARDC #6256406)
NEAL, GERBER & EISENBERG
Two N. LaSalle Street, Suite 2200
Chicago, Illinois  60602
(312) 269-8000

## CERTIFICATE OF SERVICE

I, Maria J. Minor, hereby certify that I caused copies of the above and foregoing **Notice of Removal** to be served upon:

Brian J. Wanca, Esq.
Anderson & Wanca
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
(847) 368-1501 FAX

Phillip A. Bock, Esq.
Bock & Hatch, LLC
134 N. LaSalle Street, Suite 1000
Chicago, Illinois  60602
(312) 658-5555 FAX

via facsimile and U.S. Mail from Two N. LaSalle Street, Chicago, Illinois 60602 this 1st day of May, 2008.

_____
Maria J. Minor

NGEDOCS: 07263N.1098:1522355.2

# EXHIBIT A

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, ___CHANCERY___ DIVISION

(Name all parties)

CHRISTINE PETREY, individually and as the representative
of a class of similarly situated persons

v.

TICKETMASTER and DOES 1 - 10

}

08CH    12253

No. _____

SERVE: Ticketmaster
National Registered Agents, Inc.
2030 Main Street  Ste 1030
Irvine, CA  92614

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _802_____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL  60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL  60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL  60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL  60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL  60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 51306

Name: Brian J. Wanca @ Anderson + Wanca

Atty. for: Plaintiff

Address: 3701 Algonquin Rd.  Suite 760

City/State/Zip: Rolling Meadows, IL  60008

Telephone: 847-368-1500

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____, _____

**DOROTHY BROWN** APR 0 1 2008

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT CHANCERY DIVISION

CHRISTINE PETREY, individually and as the )
representative of a class of similarly-situated )
persons, )
          )
                 Plaintiff, )
           v. )
TICKETMASTER and DOES 1 – 10, )
           )
                Defendants. )
           )
           )

**08CH    12253**

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, CHRISTINE PETREY, by her attorneys, Anderson + Wanca and Bock & Hatch, LLC,

respectfully moves this court, pursuant to 735 ILCS 5/2-801 et seq., to certify for class action treatment

the following classes, as described in Plaintiff's Class Action Complaint:

> All persons to whom Defendant provided an electronically-printed
> receipt at the point of a sale or transaction after the applicable
> statutory deadline (after December 4, 2006 for machines in use
> before January 1, 2005 or immediately for machines first used after
> January 1, 2005) and which receipt displayed either (a) more than
> the last five digits of the purchaser's credit card or debit card
> number, or (b) the expiration date of the purchaser's credit card or
> debit card, or (c) both.

Plaintiff will file a supporting Memorandum of Law in due course.

WHEREFORE, Plaintiff, CHRISTINE PETREY, prays that this court enter an order pursuant to

735 ILCS 5/2-801 certifying for class treatment the classes set forth herein.

Respectfully submitted,

CHRISTINE PETREY, individually and as the
representative for a class of similarly-situated persons

By: _Brian J. Wanca_
One of the Attorneys for Plaintiff

Brian J. Wanca  #51306
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone: 847/368-1500

Phillip A. Bock  #42073
BOCK & HATCH, LLC
134 N. LaSalle St., Ste. 1000
Chicago, IL 60602
Telephone: 312/658-5500

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTINE PETREY, individually and as            )
the representative of a class of similarly-      )
situated persons,                                )
                                                 )
                    Plaintiff,                   )
                                                 )
         v.                                      )        08CH    12253
TICKETMASTER, a Delaware corporation             )
and DOES 1-10,                                   )
                                                 )
                    Defendants.                  )

### CLASS ACTION COMPLAINT

1.    Plaintiff, CHRISTINE PETREY, ("Plaintiff") brings this action to secure redress

for herself and others similarly situated for violations by TICKETMASTER ("Defendant") and

Does 1-10, of the Fair and Accurate Transactions Act of 2003 ("FACTA") amendment to the

Fair Credit Reporting Act ("FCRA").

2.    Specifically, Plaintiff alleges that, on credit or debit card receipts provided at the

point of sale or transaction, Defendant printed more than the last five digits of the card number

and the card's expiration date.

3.    One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

No person that accepts credit cards or debit cards for the transaction of business
shall print more than the last five digits of the card number or the expiration date
upon any receipt provided to the cardholder at the point of sale or transaction.

4.    This "truncation requirement" is designed to prevent identity theft.

5.    The Federal Trade Commission has estimated that, each year, criminals

fraudulently assume the identities of more than 9 million persons for financial gain, causing

losses in excess of $50 billion.

6.    Identity thieves obtain credit card receipts that are stolen, lost, or discarded and

then use the information on them to engage in transactions. These identity thieves are commonly referred to as "carders" or "dumpster divers." This "low tech" method is more prevalent than the use of sophisticated electronic wizardry to obtain the information. *See e.g.*, Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

7.    Sophisticated identity thieves can replicate a credit card number using the expiration date and the last four digits of the card number.

8.    The expiration date is generally necessary for misuse of the card number.

9.    Merchants generally will not honor a credit card in a "card-not-present" transaction (telephone or Internet or fax) without both the correct expiration date and the card number. Thieves prefer these card-not-present transactions to reduce their chances of apprehension.

10.    To curb this means of identity theft, FACTA prohibits merchants who accept credit cards and debit cards from issuing electronically-generated receipts displaying either the expiration date or more than the last five digits of the card number.

11.    The Fair and Accurate Transactions Act of 2003 was enacted on December 4, 2003. FACTA is part of the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. §§ 1681 *et seq*, and gave merchants who accept credit or debit cards up to three years to comply with the truncation requirements. 15 U.S.C. §§ 1681c(g)(3)(A)-(B). FACTA required full compliance with its provisions no later than December 4, 2006 for all machines in use and in all transactions. 15 U.S.C. §1681c(g)(3)(A).

12.    FACTA provided two compliance deadlines: (1) Machines brought into use before January 1, 2005, must have been brought into full compliance before December 4, 2006;

and (2) machines first used after January 1, 2005 were required to fully comply immediately.

13.    Here, Plaintiff alleges that Defendant violated FACTA by failing to comply with the truncation requirement; specifically by printing more than the last five digits of the card numbers or by printing credit and debit card expiration dates on receipts provided to cardholders. Furthermore, Plaintiff alleges that Defendant violated FACTA recklessly by failing to protect Plaintiff (and a class of others similarly situated) against identity theft and credit or debit card fraud.

14.    Defendant invaded the privacy of Plaintiff and the other class members by printing their protected, private information on receipts and permitting Defendant's employees access to that private information.

15.    Plaintiff brings this action against Defendant based on Defendant's violation of 15 U.S.C. §§1681p *et seq*. Plaintiff seeks class-wide statutory damages, attorneys' fees, costs, and such other relief as the Court deems proper, including punitive damages the evidence shows them appropriate.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction pursuant to 735 ILCS 5/2-209 because Defendant does business and committed tortious acts within Illinois.

17.    Venue is proper in Cook County because Defendant is not a resident of Illinois.

## PARTIES

18.    Plaintiff CHRISTINE PETREY lives and works in Illinois.

19.    TICKETMASTER is a Delaware corporation with its headquarters in West Hollywood, California.

20.    Defendant is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

3

21.     Defendants Does 1-10 are individual officers, directors, employees and agents of Defendant who authorized, directed, or participated in the violations of law complained of.

## FACTS

22.     On March 28, 2008, nearly fifteen months after FACTA's final truncation requirement went into effect, Plaintiff received from the Defendant a computer-generated receipt displaying Plaintiff's credit card expiration date.

## CLASS ALLEGATIONS

23.     Plaintiff brings this action on behalf of a class pursuant to 735 ILCS 5/2-801.

24.     The class is defined as: "All persons to whom Defendant provided an electronically-printed receipt at the point of a sale or transaction after the applicable statutory deadline (after December 4, 2006 for machines in use before January 1, 2005 or immediately for machines first used after January 1, 2005) and which receipt displayed either (a) more than the last five digits of the purchaser's credit card or debit card number, or (b) the expiration date of the purchaser's credit card or debit card, or (c) both.[1]

25.     The class is so numerous that joinder of all individual members in one action would be impracticable. The proposed class includes more than 100 persons.

26.     Common questions of law or fact apply to the claims of all class members and those common questions predominate over questions affecting only individual members. The common questions include the following:

> a.     Whether Defendant printed sales or transaction receipts truncated credit or debit card numbers and credit or debit card expiration dates as FACTA required;

---

[1]     Excluded from the Class are Defendant's officers and directors, Plaintiff's counsel, and any Judge or Justice presiding over this action.

b.　When Defendant put its credit and debit card machines into service;

c.　Whether Defendant had a practice of providing customers sales or transaction receipts that failed to comply with FACTA's truncation requirement;

d.　Whether Defendant violated FACTA;

e.　Whether Defendant's conduct was reckless;

f.　What amount of statutory damages the Court should order Defendant to pay; and

g.　Identification and involvement of the Doe Defendants.

27.　Plaintiff's claims are typical of the claims of the other class members. Every class member's claims are based on the same legal theories and arise from the same unlawful and reckless conduct.

28.　Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

29.　A class action is superior method to other available means for the fair and efficient adjudication of the claims of class members. Individual actions are economically unfeasible and impractical.

## VIOLATION ALLEGED

30.　Defendants violated 15 U.S.C. §1681c(g)(1), which provides that:

…no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

31.　With respect to machines first placed into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

32.　With respect to machines in use before January 1, 2005, 15 U.S.C.

5

§1681c(g)(3)(A) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

33.    Defendant accepts credit cards or debit cards in the course of transacting business with persons such as Plaintiff and the other class members. In transacting such business, Defendant uses cash registers or other machines or devices that electronically print receipts for credit and debit card transactions.

34.    After the effective date of FACTA, Defendant, at the point of sale or transaction, provided Plaintiff and each class member with one or more electronically-printed receipts. On each of those receipts, Defendant failed to comply with the truncation requirement.

35.    FACTA was enacted in 2003 and gave merchants who accept credit or debit cards up to three years to comply with its requirements, mandating compliance for all machines no later than December 4, 2006.

36.    Defendant knew or should have known of FACTA's truncation requirement.

37.    On information and belief, VISA, MasterCard, the PCI Security Standards Council—a consortium founded by VISA, MasterCard, Discover, American Express and JCB— companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed Defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and Defendant's need to comply with same.

38.    These requirements were widely publicized.

39.    For example, in response to earlier state legislation enacting a similar truncation requirement, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers.

6

Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether.... The first phase of this new policy goes into effect July 1, 2003 for all new terminals...." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference with Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

40.    Within 24 hours, MasterCard and American Express announced that they were imposing similar requirements.

41.    The card issuing organizations started requiring compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

42.    For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), distributed to and binding upon all merchants accepting Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed and could not be printed on receipts. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

43.    Defendant accepts Visa cards and is a party to a contract requiring compliance with the above-quoted requirement.

44.    These requirements were widely publicized. The following are illustrative.

45.    On July 9, 2003, L. Richard Fischer of VISA USA presented a statement to the House Committee on Financial Services supporting the truncation requirements of what ultimately became FACTA. Mr. Fischer stated:

7

Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit cards and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale.

46.     The Office of Thrift Supervision of the Treasury Department (the "OTS") is

responsible for, *inter alia*, compliance with FACTA by federal savings banks. Toward this end,

the OTS publishes an Examination Handbook for OTS field personnel to use when they perform

an examination, or compliance audit, of a given financial institution. The February 2006 edition

of the Handbook states:

### Truncation of Credit and Debit Card Account Numbers

Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

47.     Heartland Payment Systems, Inc. provides credit and debit card, payroll and

related processing services to restaurant, hotel and retail merchants throughout the United States,

and indicates on its website that it provides services to over 137,000 merchants. In 2003,

Heartland broadly disseminated a pamphlet containing the following statement:

Your credit card terminal is now – or will soon be required by law or the bankcard associations to truncate – or limit – the information that can appear on electronically printed sales receipts.

What that means is that on all cardholder numbers:

- •     The expiration date must be eliminated

- •     All but the last four numbers of the card number must be obscured....

48.     In 2006, Heartland broadly disseminated a second pamphlet including the

following statement:

8

**Make every transaction a safe one. \*\*\*\***

- The cardholder's receipt *should not include* the card's expiration date and *should only include* the last 4 or 5 digits of the card number. \*\*\*\*

49. Commerce Bank, another credit card processor, sent "Merchant Compliance Awareness" notices to its customers during 2004. Those notices stated that all but the last four digits of the cardholder's account number and the entire expiration date must be suppressed from and not displayed on the receipt.

50. Many restaurant and retail trade associations notified their merchant members of FACTA's truncation requirements, mirroring Visa's truncation requirements. For example, in its February/March 2005 Newsletter, the Virginia Retail Merchants Association reported that "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number or expiration date."

51. In the April 23, 2003 edition of the monthly magazine for the National Association of Convenience Stores, an article titled "Visa USA Targets Identity Theft," appeared which included the following statement:

[A]t a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. The policy will also eliminate the card's expiration date from receipts altogether. Feinstein has introduced legislation to combat identity theft.

52. The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding FACTA's truncation requirements and including the following language:

[A]ccording to the FACTA Act, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the

> expiration date upon any receipt provided to the cardholder at the point of sale or
> transaction....

The same article appeared in the April 2005 Edition of the NACS Magazine, published by the

National Association of Convenience Stores.

    53.    In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter

included an article regarding Requirements for Credit Card Truncation stating:

> [T]here is currently no Connecticut state law, so the two ruling requirements
> come from VISA and a new Federal Fair Credit Reporting Act signed in
> December 2003.
>
> Truncation requires that all but the last four digits of the cardholder account
> number, along with the entire expiration date, be suppressed on the cardholder
> copy of the transaction receipt generated from all electronic terminals....

    54.    After FACTA's enactment, the Wisconsin Restaurant Association issued a

"Credit Card Transaction" Alert to its members, which stated:

> You may have been hearing about credit card truncation lately. This is what you
> need to know.
>
> Credit card truncation removes all but the last four (or five) digits of a credit card
> account number and the expiration date from the sales receipt. For example: A
> non-truncated receipt would list:
>
>     Acct. # 1234 5678 7654 3210 Exp. 10/05
>
> while a truncated receipt would show:
>
>     Acct. #: **** **** **** 3210 Exp **** ....
>
> The federal Fair and Accurate Credit Transaction Act of 2003, prohibits any
> person that accepts credit cards or debit cards from printing expiration date and
> more than the last five digits of the card number upon any terminal-generated
> receipt provided to the cardholder at the point of sale....

    55.    An article appeared in the January 2005 edition of the Massachusetts Restaurant

Association Newsletter notifying Association members that both Visa and MasterCard require

truncation of the entire expiration date and all but the last four digits of the cardholder account

number.

56.     Similar information was disseminated by the Ohio Restaurant Association, the

Oklahoma Restaurant Association, and a significant number of other restaurant trade

associations, and retail merchant trade associations.

57.     An article was published in the March/April 2006 Edition of the Ohio

Independent Automobile Dealers' Association Dealer News Magazine entitled, "What You

Should Know About Credit and Debit Card Procession and the FACTAs about Card

Truncation." The article states:

> What is Card Truncation?  This federal law sets deadlines by which the receipt
> electronically printed from a credit card sale must be truncated—meaning, the
> receipt given to the customer shows no more than the last five digits of the
> customer's credit card number and does not show the expiration date.
>
> Business owners are responsible for merchant account compliance with the
> truncation regulations and must make sure their printed cardholder receipts do not
> contain expiration dates or full account numbers.

This same article appeared in the March/April edition of the West Coast Independent

Automobile Dealer News.

58.     The Independent Insurance Agents & Brokers of America circulated a report to its

members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, the Fair and

Accurate Credit Transactions Act, and the Drivers Privacy Protection Act." In relevant part, this

publication stated:

> Under the FACTA Act, businesses and others accepting credit or debit cards for
> payment may not print more than the last five digits of the card number nor may
> they print the expiration date upon any receipt provided to the cardholder at the
> point of sale.

59.     The November 18, 2004 edition of the Compliance Challenge, published by the

Credit Union National Association News, stated, "FACTA prohibits anyone that accepts

credit/debit cards to print more than the last 5 digits of the card number or expiration date on any receipt at the point of sale or transaction...."

60.     Truncation standards, including the standards reflected in the Visa Merchant Rules and in FACTA, permit the publication of the last four or five digits of customer account numbers on the receipt presented to customers at the point of sale. The publication of this minimal amount of account information is sufficient to facilitate merchant account reconciliation, processing of returns, etc. In isolation, the publication of *only* the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

61.     Publishing or making known expiration dates on customer receipts disseminated at the point of sale, with the last four or five digits of the customer's account number, exponentially increases the possibility of identity theft, which is the palpable reason that Visa, and then Congress, required the truncation of expiration dates.

62.     Credit and debit card account numbers are not randomly generated. Instead, account numbers reflect an internal coding scheme set forth by the International Organization for Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips. Consistent with this standard, every credit card number consists of the following: (a) a single digit Major Industry Identifier ("MII"); (b) an issuer identification number ("IIN"); (c) a number unique to the card; and (d) a check digit.

63.     The MII identifies the industry of the issuer of the card.

64.     The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.

65.     The seventh through next to the last digits, up to a maximum of 12 digits, are the numbers unique to the card.

66.     The last digit is a "check digit" that is not randomly assigned, but instead calculated by a defined algorithm. Therefore, the "check digit" is derivative of the other numbers in the credit card number.

67.     Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers.

68.     Because an identity thief is able to decipher a credit card user's account number, the importance of truncating expiration dates becomes manifest. That is, unlike the account number on the credit or debit card, the expiration date cannot be deciphered through sophisticated mathematical modeling. Therefore, the expiration date is an important security check that corroborates that a person attempting to use a given account number is actually the authorized user of the card.

69.     Expiration dates also help confirm that a person making a purchase over the phone or on the internet possesses the card.

70.     Banks and credit card associations (*i.e.* Visa, MasterCard, American Express, etc.) are keenly aware of the importance of truncating expiration dates.

71.     An identity thief who acquires a receipt containing the last four or five digits of a credit card number ***and*** the card's expiration date can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential information.

72.     The FTC issued rules governing interpretation of the statute, including:

According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:

ACCT: ***********12345

EXP: ****

*See* Bureau of Consumer Protection, Federal Trade Commission, *Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007).

73.     The cost of truncating credit and debit account numbers (or expiration dates) is minimal.

74.     Most of Defendant's business peers and competitors brought their credit and debit card receipt printing processes into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have done the same.

75.     FACTA creates a statutory right of privacy.

76.     Defendant made known to its staff and possibly others Plaintiff's private credit card information, violating Plaintiff's right of privacy. Stated differently, by publishing Plaintiff's private credit card information to Defendant's staff and possibly others, Defendant violated Plaintiff's right of privacy. Defendant similarly violated the privacy rights of the other class members.

77.     Defendant recklessly disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA. 15 U.S.C. § 1681n.

78.     Therefore, Defendant is liable to Plaintiff and the other class members for, among

14

other things, "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(A).

WHEREFORE, Plaintiff, CHRISTINE PETREY, demands judgment in favor of Plaintiff and the other class members and against Defendants as follows:

a.  That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

b.  For statutory damages of $100 to $1000 per violation;

c.  For attorney's fees, litigation expenses, and costs; and

d.  For such other and further relief as the Court may deem proper, including punitive damages if appropriate.

CHRISTINE PETREY, individually and on behalf of all others similarly situated,

By: One other attorneys

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500
Attorney No. 51306

Phillip A. Bock
BOCK & HATCH, LLC
134 N. LaSalle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500
Attorney No. 42073